**Affirmed; Opinion Filed September 25, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-01044-CV

**JOSEPH STUMPH, JOYCE STUMPH, and SHAWN MICHAEL STUMPH, Appellants**

**V.**

**DALLAS LEMMON WEST, INC., DALLAS LEMMON WEST, INC. d/b/a THE LOON, and CC-TURTLE CREEK, INC., Appellees**

**On Appeal from the 192nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. CD-11-11015-K**

## MEMORANDUM OPINION
Before Justices Lang, Fillmore, and Whitehill
Opinion by Justice Lang

Joseph, Joyce, and Shawn Stumph appeal the trial court's take nothing summary judgment in favor of Dallas Lemmon West, Inc. and Dallas Lemmon West, Inc. d/b/a The Loon (collectively the Loon) and CC-Turtle Creek, Inc. on their Texas Dram Shop Act and premises liability claims. In two issues, the Stumphs assert that the trial court erred when it granted summary judgment for the defendants because: (1) the record contains evidence that the Loon served Shawn Stumph alcohol when he was obviously intoxicated which proximately caused Shawn to fall from the CC-Turtle Creek bridge and sustain injuries; and (2) the record contains evidence that the bridge owned by CC-Turtle Creek contained dangerous defects that proximately caused Shawn Stumph to fall from the bridge and sustain injuries. For the following reasons, we affirm the judgment of the trial court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Shawn Stumph was leaving his job and was given a party by his coworkers at an establishment by the name of "The Quarter Bar." The party started at about 6:15 p.m. on August 26, 2010. There, Shawn ordered and paid for six gin drinks. The record does not reflect whether Shawn drank any or all of those six drinks. Around 10:30 that night, one of Shawn's friends dropped him off at a nearby bar known as "the Loon." Shawn left the Loon alone, on foot, around 12:45 a.m. He was not seen again until approximately 7:14 a.m. on August 27, 2010.

At that time on August 27, a jogger found Shawn unconscious in a creek bed beneath a "vehicular" bridge owned by CC-Turtle Creek. The bridge was abutted on one end by Bowen Street and on the other end by a grassy field. CC-Turtle Creek purchased the bridge and the grassy field in 2005 to construct and operate a senior living community in the grassy area. In 2008, development of the property had not yet begun, and CC-Turtle Creek altered its construction plans and attempted to sell the bridge and adjacent grassy area. In 2011, CC-Turtle Creek sold the entire property. CC-Turtle Creek claims that between 2008 when it altered its development plans and 2011 when it sold the property, no business activities were conducted on the bridge or in the field. The previous owner of the bridge erected a chain link fence across the entrance to the bridge that abutted Bowen Street, and CC-Turtle Creek retained that fence. CC-Turtle Creek did not erect a similar barrier on the other end of the bridge, and it remained accessible from the entrance point of the grassy field.

When Shawn Stumph was found beneath the bridge on August 27, 2010, his blood-alcohol content was more than one-and-a-half times the legal limit. Medical records also indicated that Shawn suffered facial and skull fractures, a traumatic brain injury, rib and other fractures, and laceration of his right kidney and liver. Shawn's medical records state in one entry that he "was the victim of aggravated assault," and that he "was thrown from a 20 ft. bridge pta." Another

entry in his medical records states the cause of his injury as a "possible fall from bridge vs. Agg. assault." A third entry in his medical records states that Shawn might have jumped from the bridge.

The police report made after Shawn was discovered in the creek bed notes that Shawn had "apparently fallen from the bridge above." It also notes there were "no signs of struggle on [the] bridge," and that it was unknown whether Shawn was pushed or fell. Also noted is a statement that the officer was responding to a person injured by "unknown means."

One or two days after Shawn Stumph was found unconscious beneath the bridge, his father, Joseph, met with a police officer who took him to the location where a jogger found Shawn on the morning of August 27, 2010. At that time, Joseph took photographs of the bridge and creek bed. The photographs reflect that the chain link fence spanning the end of the bridge that bordered Bowen Street was bent, leaving a two to three foot gap that could allow people to enter the bridge from Bowen Street. The photographs also reflect that the bridge lacked guardrails on one of its sides and was unlit. Additionally, there were no warning signs advising that the bridge lacked guardrails or that trespassers should stay off the bridge.

Shawn remembers nothing. No witnesses were identified who saw any events involving Shawn at or near the bridge. The record reflects no evidence indicating whether Shawn was ever on the bridge, by what route Shawn might have entered the bridge, and if Shawn did enter the bridge, whether he did so alone.

On August 31, 2011, Joseph and Joyce Stumph filed suit on behalf of their now-incapacitated son. The Stumphs fifth and final amended petition alleged liability of the Loon under the Texas Dram Shop Act and premises liability as to CC-Turtle Creek. Both the Loon and CC-Turtle Creek filed no-evidence and traditional motions for summary judgment, the Stumphs filed

–3–

responses, and the trial court granted summary judgment for both the Loon and CC-Turtle Creek. The Stumphs now appeal.

## II. SUMMARY JUDGMENT

### A. *Standard of Review*

We review the decision to grant a motion for summary judgment de novo. *Mid-Century Ins. Co. v. Ademaj*, 243 S.W.3d 618, 621 (Tex. 2007).

In reviewing a traditional summary judgment in favor of a defendant, we determine whether the defendant conclusively disproved an element of the plaintiff's claim or conclusively proved every element of an affirmative defense. *Smith v. Deneve*, 285 S.W.3d 904, 909 (Tex. App.—Dallas 2009, no pet.). A matter is conclusively proved if "ordinary minds could not differ as to the conclusion to be drawn from the evidence." *Estate of Hendler*, 316 S.W.3d 703, 707 (Tex. App.–Dallas 2010, no pet.).

In reviewing a no-evidence summary judgment in favor of a defendant, we apply the same legal sufficiency standard used to review a directed verdict. *See* TEX. R. CIV. P. 166(a)(i); *Gen. Mills Rests., Inc. v. Tex. Wings, Inc.*, 12 S.W.3d 827, 832–33 (Tex. App.–Dallas 2000, no pet.). We must determine whether the nonmovant produced more than a scintilla of probative evidence to raise a fact issue on the material questions presented. *Bever Props., L.L.C. v. Jerry Huffman Custom Builder, L.L.C.*, 355 S.W.3d 878, 885 (Tex. App.–Dallas 2011, no pet.).

More than a scintilla of evidence exists if the evidence would allow "reasonable and fair-minded people to differ in their conclusions." *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004). "Evidence that is so slight as to make any inference a guess is in legal effect no evidence." *Id.*

In reviewing both a traditional and a no-evidence summary judgment, we take evidence favorable to the nonmovant as true, and indulge every reasonable inference and resolve every doubt in favor of the nonmovant. *Deneve*, 285 S.W.3d at 909.

### B. Proximate Cause

### 1. Applicable Law

The Stumphs' claims assert Texas Dram Shop Act liability of the Loon and premises liability as to CC-Turtle Creek. Both of these theories of liability require the Stumphs to establish the proximate cause of Shawn's injuries. *LMB, Ltd. v. Moreno*, 201 S.W.3d 686, 688 (Tex. 2006) (a landowner's failure to use reasonable care to reduce or eliminate an unreasonable risk of harm must proximately cause injury); TEX. ALCO. BEV. CODE ANN. § 2.02(b) (West 2007) (requiring the intoxication of the recipient of the alcoholic beverage to proximately cause the damage suffered). The Loon and CC-Turtle Creek moved for summary judgment on the ground there was no evidence the conduct of the Loon or the condition of CC-Turtle Creek's premises proximately caused Shawn's injuries.

Proximate cause requires evidence that establishes both cause-in-fact and foreseeability. *Smith v. Mohawk Mills, Inc.*, 260 S.W.3d 672, 675 (Tex. App.–Dallas 2008, no pet.). This Court has explained that "[a]n act or omission is a cause-in-fact-of an injury if it was a substantial factor in causing the injury and without the act or omission, the harm would not have occurred." *Id.* at 675–76. A finding of cause in fact may be based on either direct or circumstantial evidence, "but cannot be supported by mere conjecture, guess, or speculation." *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727 (Tex. 2003). Additionally, "an inference stacked only on other inferences is not legally sufficient evidence." *Id.* at 728. Where the circumstances could give rise to "any number of inferences, none more probable than the other" causation is not established. *Id.* at 729.

Evidence that a defendant's conduct furnished "a condition which makes the injuries possible" is not evidence of proximate cause. *IHS Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 799 (Tex. 2004). This is because "the conduct of the defendant may be too attenuated from the resulting injuries to the plaintiff to be a substantial factor in bringing about the harm." *Id.*

In *Pitzner*, an air conditioning repairman sued a commercial tenant for injuries he claimed to sustain in a fall from the roof of the tenant's building. *Pitzner*, 106 S.W.3d at 725–26. At issue was whether the repairman produced "legally sufficient evidence that the alleged premises defects proximately caused his injuries." *Id.* The repairman remembered nothing. *Id.* at 726. His injuries were consistent with a fall, but also with assault and battery. *Id.* at 729. The Supreme Court of Texas found that due to a lack of evidence on the element of proximate cause, the factfinder could only speculate as to (1) whether the repairman had actually fallen from the roof; (2) whether he actually came into contact with a high-voltage wire on the roof, causing him to stumble; and (3) whether and how the lack of a power disconnect on the roof was a substantial factor in causing the injuries. *Id.* The Court concluded that Pitzner presented only "slight circumstantial evidence," and "something else must be found in the record to corroborate the probability of the fact's existence or non-existence." *Id.* (quoting *Lozano v. Lozano*, 52 S.W.3d 141, 148 (Tex. 2001)). Accordingly, the Supreme Court of Texas reversed and rendered a take nothing judgment, emphasizing that there was "no evidence that the condition of Marathon's premises proximately caused Pitzner's injuries."

Similarly, in *Smith*, an invitee fell through an open loading dock door at a warehouse. *Smith*, 260 S.W.3d at 673. No one witnessed the accident and Smith remembered nothing. *Id*. At issue was whether a premises defect had proximately caused the plaintiff's injuries. *Id.* This Court affirmed summary judgment for the defendant as there was no evidence in the record indicating

that an alleged defective condition "caused or contributed to Smith's accident." *Id.* at 676. Smith argued that he was struck by a forklift and fell through a defective safety chain, but the record contained no such proof. *Id.* This Court affirmed the trial court judgment, concluding that "proximate causation cannot be shown through conjecture, guess, or speculation." *Id.* (citing *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 551 (Tex. 2005)).

### 2. Application of the Law to the Facts

Similar to *Pitzner* and *Smith*, the record in this case shows Shawn Stumph remembers nothing of how he was injured. There were no witnesses to the incident that caused his injuries. Like the plaintiff in *Pitzner*, at least two theories could support Shawn's claim: he was assaulted or he sustained a traumatic fall. However, there is no evidence in the record of what happened to Shawn after he left the Loon at 12:45 a.m. until he was found by the jogger at 7:14 a.m. The Stumphs have not carried their burden on the element of proximate causation as to either theory of liability. Accordingly, we decide both of appellants' issues against them. The trial court did not err in granting summary judgment for the Loon and for CC-Turtle Creek.

## III. CONCLUSION

The trial court did not err when it granted summary judgment for the appellees. The judgment of the trial court is affirmed.

141044F.P05

/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

JOSEPH STUMPH AND JOYCE
STUMPH, Appellants

No. 05-14-01044-CV        V.

DALLAS LEMMON WEST, INC.,
DALLAS LEMMON WEST, INC. d/b/a
THE LOON, and CC-TURTLE CREEK,
INC., Appellees

On Appeal from the 192nd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-11-11015-K.
Opinion delivered by Justice Lang.   Justices
Fillmore and Whitehill participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

It is **ORDERED** that appellees DALLAS LEMMON WEST, INC., DALLAS LEMMON
WEST, INC. d/b/a THE LOON and CC-TURTLE CREEK, INC., recover their costs of this
appeal from appellants JOSEPH STUMPH AND JOYCE STUMPH.

Judgment entered this 25th day of September, 2015.